UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAMON TAYLOR,<br><br>             Plaintiff,<br><br>       v.<br><br>UYEDA, et al.,<br><br>             Defendants. | Case No. 25-cv-08760-PCP<br><br>**ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND; GRANTING APPLICATIONS TO PROCEED IN FORMA PAUPERIS**<br><br>Re: Dkt. No. 2 |

Namon Taylor filed a *pro se* civil rights action under 42 U.S.C. § 1983 regarding events that occurred while he was incarcerated at San Francisco County Jail ("S.F. Jail"). Dkt. No. 1 ("Compl."). For the reasons stated below, Mr. Taylor's Complaint is DISMISSED with leave to amend as to some defendants, and without leave to amend as to others.

**Background**

As defendants, Mr. Taylor sues Deputy Uyeda, Captain Winters, and Sergeant Majano, all of whom work at S.F. County Jail; the San Francisco Sheriff's Office; and all of "Psychiatric Services" at S.F. County Jail. Compl. at 1, 2.

Mr. Taylor alleges that on July 17, 2025, defendant Uyeda conducted a "routine pat-search" of Mr. Taylor. *Id*. at 2. Mr. Taylor alleges that during this search, defendant Uyeda "rubbed his hands across [Mr. Taylor's] buttocks, then he groped [Mr. Taylor's] left butt cheek." *Id*. Mr. Taylor "felt violated and stopped the search." *Id*. He was then placed in handcuffs. *See id*. at 3. When Mr. Taylor refused to be searched by defendant Uyeda several months later, defendant Uyeda "threatened to move [Mr. Taylor] out of the program pod." *Id*.

Mr. Taylor alleges that he experienced distress after defendant Uyeda's search and requested help from psychiatric services at S.F. County Jail but was never provided treatment. *See*

*id*. Mr. Taylor alleges that defendants Winters, Majano, and the San Francisco Sheriff's Office did not satisfactorily respond to his grievances regarding Defendant Uyeda's search. *See id*.

**Legal Standard**

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**Analysis**

**I.    First and Fourth Amendment Claims**

Mr. Taylor has stated cognizable First and Fourth Amendment claims against defendant Uyeda for an allegedly inappropriate search and alleged attempts to retaliate against Mr. Taylor. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977) (explaining that retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper). *See also Bull v. San Francisco*, 595 F.3d 964, 974–75 (9th Cir. 2010) (en banc) (explaining that the Fourth Amendment applies to the invasion of bodily privacy in prison); *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988) (same).

Mr. Taylor may only seek damages from defendant Uyeda in defendant Uyeda's individual capacity, not his official capacity. *See Confederated Tribes & Bands v. Locke*, 176 F.3d 467, 469 (9th Cir. 1999) (finding that a damages claim against governor in his official capacity was barred by the Eleventh Amendment). Mr. Taylor's request for official-capacity damages therefore is dismissed without leave to amend.

As explained below, Mr. Taylor's Complaint is dismissed with leave to amend as to another claim and defendant. Because Mr. Taylor already has stated cognizable claims against defendant Uyeda, the Court will serve the existing Complaint on defendant Uyeda **if** Mr. Taylor elects to forgo his other claims against other defendants.

2

## II.    Eighth Amendment Claim

Mr. Taylor may be able to state an Eighth Amendment claim against a defendant at S.F. Jail for the failure to provide mental health services. More information is required before such a claim may be found cognizable, however. Accordingly, Mr. Taylor's Eighth Amendment claim is DISMISSED WITH LEAVE TO AMEND.

"'The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and to "'take reasonable measures to guarantee the safety of the inmates.'" *Id.* A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending conduct was wanton, *id*. (citing *Wilson*, 501 U.S. at 297).

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). A mentally ill prisoner may establish unconstitutional treatment on behalf of prison officials by showing that officials have been deliberately indifferent to his serious mental health needs. *See Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994); *see also Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (explaining that mental health care requirements are analyzed as part of general health care requirements); *Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir. 2010) (concluding that a heightened suicide risk or an attempted suicide is a serious medical need

3

United States District Court
Northern District of California

and reversing grant of summary judgment to transporting police officers where plaintiffs presented sufficient evidence for a jury to find that the decedent's pre-suicidal actions objectively evidenced a serious medical need), *reinstated as modified by* 658 F.3d 897 (9th Cir. 2011).

A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Consequently, for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060. The deliberate indifference standard does not require a showing that the prison official acted with an improper motive, such as an intent to harm; it is enough that the official acted or failed to act despite knowledge of a substantial risk of serious harm. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 793 (9th Cir. 2019). For example, in *Conn*, the Ninth Circuit reversed the district court's grant of summary judgment to transporting police officers where a decedent's children presented sufficient evidence for a jury to conclude that transporting police officers (a) must have been subjectively aware that the decedent, a pre-trial detainee, was at an acute risk of harm (suicide) and suffered a serious medical need; (b) failed to respond properly to such risk by informing jail officials; and (c) the failure was both the actual and proximate cause of the decedent's suicide once at the jail. *See Conn*, 591 F.3d at 1097–1102.

At this time, Mr. Taylor has not provided sufficient information for the Court to conclude that any defendant was deliberately indifferent to Mr. Taylor's mental health needs. Mr. Taylor states only that he "placed several request[s] to psychiatric services – by way of the electronic tablet – due to mental complications associated with" defendant Uyeda's search. Compl. at 3. This allegation is not specific enough to show that some mental health provider was aware that Mr. Taylor had a serious need for treatment. For example, a "request" could have been for some sort of mediation between Mr. Taylor and defendant Uyeda or could have been a vague request to be

United States District Court
Northern District of California

evaluated when the psychiatric services department had availability. If Mr. Taylor chooses to amend this claim, he should explain what he told the psychiatric services department in his requests that would have alerted that department to Mr. Taylor's serious mental health needs.

On amendment, Mr. Taylor also must **either** identify an individual who denied him treatment **or** a policy that caused him to be denied treatment. In general, a defendant may only be held liable under section 1983 for his or her own conduct. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983."); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) ("In a § 1983 suit … each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). To sue an entity such as all of "psychiatric services" on the claims alleged, Mr. Taylor must establish: "(1) that he possessed a constitutional right of which he [] was deprived; (2) that [S.F. Jail psychiatric services] had a policy; (3) that this policy amount[ed] to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy [was] the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citations and quotation marks omitted) (explaining how a government agency may be held liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). If a plaintiff cannot identify an unconstitutional policy of the government agency, the plaintiff must "produce evidence creating a triable issue of fact regarding the existence of an unconstitutional practice or custom." *Gordon v. Orange County*, 6 F.4th 961, 974 (9th Cir. 2021) (concluding no custom or practice was shown where the record lacked evidence of any other event involving similar conduct or constitutional violations). "[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

Here, Mr. Taylor has not identified any policy or practice which caused the alleged denial of mental health services. If he chooses to amend his Eighth Amendment claim, he must **either** identify such a policy or practice to hold the entire psychiatric services department liable **or** must identify the individual responsible for denying mental health services and explain what that individual did (or failed to do) that harmed Mr. Taylor.

### III.    Captain Winters, Sergeant Majano, and the San Francisco Sheriff's Office

Mr. Taylor does not state a cognizable claim against defendants Winters, Majano, or the San Francisco Sheriff's Office, and the facts reveal that he cannot.

Mr. Taylor alleges only that these persons and entities did not respond to his grievances in a satisfactory manner. *See* Compl. at 3 (stating defendant Winters did not respond to a request for a meeting, defendant Majano did not follow up on Mr. Taylor's request, and the Sheriff's Department does not respond to inmate complaints after staff's initial answer). It is well-settled that the denial or mishandling of a grievance does not constitute a violation of a prisoner's constitutional rights. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("Ramirez's claimed loss of a liberty interest in the processing of his appeals does not satisfy this standard, because inmates lack a separate constitutional entitlement to a specific prison grievance procedure."); *accord Young v. Voong*, 738 F. App'x 509, 510 (9th Cir. 2018) (same). Accordingly, Mr. Taylor cannot base a claim against any defendant on how that defendant handled (or did not handle) Mr. Taylor's grievance against defendant Uyeda.

Because this defect cannot be cured by amendment, Mr. Taylor's claims against defendants Winters, Majano, and the San Francisco Sheriff's Office are DISMISSED WITHOUT LEAVE TO AMEND.

### Conclusion

1.    Mr. Taylor has not stated cognizable claims against defendants Winters, Majano, or the San Francisco Sheriff's Office. As explained above, amendment of the claim(s) against these defendants would be futile. Accordingly, these defendants are dismissed from this action without leave to amend.

2.    Mr. Taylor may only proceed against defendants in their individual capacity. His official capacity claims all are dismissed without leave to amend.

3.    Mr. Taylor has stated cognizable First and Fourth Amendment claims against defendant Uyeda. Mr. Taylor also may have a cognizable Eighth Amendment claim against a psychiatric provider at the S.F. Jail, but more information is required. Mr. Taylor's Complaint is dismissed so that he may provide more information to support his Eighth Amendment claim. In

United States District Court
Northern District of California

6

the alternative, Mr. Taylor may notify the Court that he intends to proceed only on his First and Fourth Amendment claims against defendant Uyeda.

4.     Within thirty-five days of the date this order is filed, Mr. Taylor may file a FIRST AMENDED COMPLAINT. The first amended complaint must include the caption and civil case number used in this order (CV 25-8760-PCP (PR)) and the words FIRST AMENDED COMPLAINT on the first page. If Mr. Taylor files a first amended complaint, he must allege facts that demonstrate he is entitled to relief on his Eighth Amendment claim in addition to his First and Fourth Amendment claims. An amended complaint supersedes the original complaint. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262–63 (9th Cir. 1992) (where an amended complaint did not name all the defendants to an action, they were no longer defendants).

5.     **In the alternative**, Mr. Taylor may file a notice with the Court stating that he wishes to dismiss his potential Eighth Amendment claim and to proceed only on his First and Fourth Amendment claims against defendant Uyeda. If Mr. Taylor files such a notice, the Court will order service of the Complaint against defendant Uyeda and will establish a briefing schedule.

6.     **Failure to file a notice or an amended complaint within the allotted time and in accordance with this order will result in a finding that further leave to amend would be futile. If Mr. Taylor fails to file either an amended complaint or a notice, the Court will assume that Mr. Taylor intends to proceed only on his claims against defendant Uyeda and will establish a briefing schedule.** If Mr. Taylor needs an extension of time to amend his complaint, the extension must be requested **before** the deadline to amend has passed.

7.     It is Mr. Taylor's responsibility to prosecute this case. Mr. Taylor must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

8.     Mr. Taylor's application to proceed *in forma pauperis* is GRANTED. *See* Dkt. No.

United States District Court
Northern District of California

2. The initial partial filing fee is $15.00. *Compare* 28 U.S.C. § 1915(b)(1) (requiring a court to assess an initial filing fee of 20 percent of a prisoner's average monthly deposits or monthly balance, whichever is greater) *with* Dkt. No. 2 (identifying Mr. Taylor's average monthly balance). A copy of this order and the attached instructions will be sent to Mr. Taylor via U.S. mail and to the court's financial office via email at CAND_Finance@cand.uscourts.gov.

**IT IS SO ORDERED.**

Dated: July 6, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE

The prisoner shown as the plaintiff or petitioner on the attached order has filed a civil action in forma pauperis in this court and owes to the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee. This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00). The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid. If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case. The trust account office should make the monthly calculations and payments for each case in which it receives an order granting in forma pauperis and these instructions.

The prisoner's name and case number must be noted on each remittance. The initial partial filing fee is due within thirty days of the date of the attached order. Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:     Plaintiff/Petitioner

Court's Finance Office
United States District Judge

9